## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANE DOE, individually and on behalf of others similarly situated,<br>　　　　　　Plaintiff,<br>　　v.<br>LCMC HEALTH HOLDINGS, INC.<br>　　　　　　Defendant. | CASE NO. _____<br><br>(Removal from: the Civil District Court for the Parish of Orleans, Case No. 2022-10417, Division L, Section 6)<br><br>Jury Trial Demanded |

## NOTICE OF REMOVAL

Defendants LCMC Health Holdings, Inc. and Louisiana Children's Medical Center (collectively, "LCMC," or the "LCMC defendants") hereby remove this putative class action to federal court pursuant to both the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). In support of this removal, LCMC provides this "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

## NATURE OF THE CASE

1.　On November 10, 2022, plaintiff Jane Doe filed a Class Action Petition against defendant LCMC Health Holdings, Inc. in the Civil District Court for the Parish of Orleans, Case No. 2022-10417, Division L, Section 6. (*See* Ex. A, Verified Dckt., Doe Pet., filed Nov. 10, 2022.) Plaintiff Jane Doe initially served defendant LCMC Health Holdings with the Petition on January 3.

2.　On January 5, defendant LCMC Health Holdings was served with two Amended and Restated Petitions. One of these amended petitions was filed by Jane Doe. The second petition was filed by a named plaintiff named Pebbles Martin. (*See* Ex. A, Doe Am. Pet., filed Dec. 2, 2022 (hereafter Doe Am. Pet.); Martin Am. Pet., filed Dec. 2, 2022.)

3. Finally, on January 27, 2023, plaintiff Pebbles Martin filed a Second Amended and Restated Petition, further naming Louisiana Children's Medical Center as a defendant in the case. (*See* Martin 2d Am. Pet., filed Jan. 27, 2023 (hereafter Martin 2d Am. Pet.).)

4. The underlying factual basis for each of the petitions is the same: that LCMC allegedly violated Louisiana law by embedding certain third-party source code onto LCMC's publicly available websites. This source code is referred to in the petitions as the "Meta Pixel." (*See* Ex. A, Martin 2d Am. Pet. ¶ 54; Doe Am. Pet. ¶ 50.)

5. Plaintiffs allege that "[o]nce Meta Pixel is installed on a business's website, the Meta Pixel tracks users as they navigate through the website and logs which pages are visited, which buttons are clicked, the specific information entered in forms (including personal information), as well as 'optional values' by the business website." (Ex. A, Martin 2d Am. Pet. ¶ 66; Doe Am. Pet. ¶ 57.)

6. Plaintiffs allege that "Facebook's intrusion into the personal data of the visitors to third-party websites incorporating the Meta Pixel is both significant and unprecedented." (Ex. A, Martin 2d Am. Pet. ¶ 81; Doe Am. Pet. ¶ 72.)

7. At the same time, plaintiffs acknowledge that "Meta Pixel is wildly popular and embedded on millions of websites," including "many of the top hospitals in the United States *and on the password-protected patient portals of many healthcare systems*." (Ex. A, Martin 2d Am. Pet. ¶ 83; Doe Am. Pet. ¶ 74.)

8. Plaintiffs' petitions each contain two counts. First, plaintiffs allege that LCMC violated the Louisiana Wiretap Act through the Meta Pixel source code. (Ex. A, Martin 2d Am. Pet. ¶¶ 182-205; Doe Am. Pet. ¶¶ 152-175.) Second, plaintiffs allege that LCMC Health was unjustly enriched through the Meta Pixel source code. (*Id.*, ¶¶ 206-212 & ¶¶ 176-182.)

9. Plaintiffs seek to represent a putative class in pursuing these claims, defined as follows: "All citizens of the state of Louisiana who, from June 15, 2012, thru [the Date of Certification] are, or were, patients of LCMC Health or any of its affiliates and who exchanged communications on one or more of Defendant's websites." (Ex. A, Martin 2d Am. Pet. ¶ 172; Doe Am. Pet. ¶ 142.)

## BASIS FOR REMOVAL

### I. Removal is Proper Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).

10. LCMC removes this case pursuant to the federal officer removal statute, codified at 28 U.S.C. § 1442(a). Under that statute, a civil action that is "against or directed to" any of the following may be removed to federal court: "(1) the United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency therefore, in an office or individual capacity, *for or relating to any act under color of such office* . . . ." *Id.* § 1442(a)(1) (emphasis added).

11. The Fifth Circuit has held that the purpose of the statute is "to give those who carry out federal policy a more favorable forum than they might find in state court." *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 232 (5th Cir. 2022).

12. To remove under the statute, the LCMC defendants must show that: "(1) they are a 'person' within the meaning of the statute; (2) they acted 'pursuant to a federal officer's directions;' (3) they assert a 'colorable federal defense'; and (4) there is 'a causal nexus' between the defendant's acts under color of federal office and the plaintiff's claims." *Id.* at 234 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020)).

### A. *LCMC is a "Person" within the meaning of the statute.*

13. Plaintiffs allege that both LCMC defendants are "Louisiana corporation[s] with [their] principal place of business in the Parish of Orleans[.]" (Ex. A, Martin 2d Am. Pet. ¶¶ 7-8; Doe Am. Pet. ¶ 7.)

14. The LCMC defendants are thus persons under the federal officer removal statute. *See, e.g., Dempster v. Lamorak Ins. Co.*, 435 F. Supp. 3d 708, 723-24 (E.D. La. 2020) ("Both the Supreme Court and the Fifth Circuit have recognized that the removal statute applies to both private persons and corporate entities who lawfully assist the federal officer in the performance of his official duty.") (quotation omitted).

### B. *LCMC Acted Pursuant to a Federal Officer's Directions.*

15. As stated above, the basis for plaintiffs' petitions is that LCMC allegedly committed privacy violations through the Meta Pixel on the following websites:

(a) https://www.lcmchealth.org;

(b) https://www.chnola.org/;

(c) https://www.lcmchealthorg./university-medical-center-new-orleans/;

(d) https://www.lcmchealth.org/touro/;

(e) https://www.lcmchealth.org/east-jefferson-general-hospital; and

(f) https://www.lcmchealth.org/west-jefferson-medical-center.

(Ex. A, Martin 2d Am. Pet. ¶ 17; Doe Am. Pet. ¶ 16.)

16. Each of the LCMC Health websites identified in the amended petitions contains a direct link to the login page for LCMC's patient portal, available at: https://www.lcmchealth.org/for-patients/patient-portal/.

17. Through this link, LCMC patients, as well as their parents, guardians and wards, can log into their LCMC MyChart patient portal accounts, available at https://www.mylcmchealth.org/MyChart/Authentication/Login?.

18. The chnola.org home page also contains a direct link identified as "Patient Portal Login." (*See* chnola.org ("Patient Portal/Pay my Bill").) By clicking this link, individuals are also taken to the same MyChart patient portal account log-in page, available at https://patientportal.lcmchealth.org/MyChart/Authentication/Login.

19. LCMC acted, and continues to act, pursuant to federal officer direction in making this MyChart patient portal available online to LCMC's patients and the other third parties who have legitimate access to their accounts.

20. This federal action first began in 2004. At that time, and "to provide leadership for the development and nationwide implementation of an interoperable health information technology infrastructure to improve the quality and efficiency of health care," President George W. Bush first established "the position of National Health Information Technology Coordinator." *See* Exec. Order 13335, at pg. 702 (Apr. 27, 2004), *Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator*, available at https://www.presidency.ucsb.edu/documents/executive-order-13335-incentives-for-the-use-health-information-technology-and.

21. In this Executive Order, the President tasked the National Health Coordinator with putting together a nationwide strategic plan to "[a]dvance the development, adoption, and implementation of health care information technology standards nationally through collaboration among public and private interests, and consistent with current efforts to set health information technology standards for use by the federal government." *Id.* at pg. 703.

22. In 2009, following the Executive's lead, Congress then acted next, through the Health Information Technology for Economic and Clinical Health Act of 2009 (HITECH Act).

23. The HITECH Act not only codified the National Coordinator position, *see* 123 Stat. 115, 230 (2009), but further "allocated billions of dollars for the health care system to adopt and meaningfully use health IT to improve health." Office of the Nat'l Coordinator for Health Information Technology (ONC), *Federal Health Information Strategic Plan, 2011-2015*, at pg. 4, available at https://www.healthit.gov/sites/default/files/utility/final-federal-health-it-strategic-plan-0911.pdf; 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology); C. Stephen Redhead, *The Health Information Technology for Economic and Clinical Health (HITECH) Act*, at pg. 2 (Cong. Res. Serv. Apr. 27, 2009) (discussing various financial incentives; "Beginning in 2011, the legislation provides Medicare incentive payments to encourage doctors and hospitals to adopt and use certified EHRs. Those incentive payments are phased out over time and replaced by financial penalties for physicians and hospitals that are not using certified EHRs.").

24. The following year, the Department of Health and Human Services implemented this Congressional enactment through the Meaningful Use regulations, which are now known as the Promoting Interoperability Program regulations. *See* Vol. 75 Fed. Reg., No. 144, pg. 44314 (Jul. 28, 2010). In introducing the final regulations the Department of Health and Human Services stated: "Certified EHR technology used in a meaningful way is one piece of a broader HIT infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.*, 44321.

25. The Department adopted a "phased approach" to the Meaningful Use regulations, with three stages. *See* 42 C.F.R. § 495.20 (Meaningful use objectives and measures for EPs,

eligible hospitals, and CAHs before 2015); 42 C.F.R. § 495.22 (same for 2015 through 2018); 42 C.F.R. § 495.24 (Stage 3 meaningful use objectives for 2019 and subsequent years).

26. The constant in Meaningful Use Program regulations through all these phases has been a firm directive from the federal government to provide individuals with the ability to view their patient health records electronically though online patient portals. *See, e.g.,* 42 C.F.R. § 495.20(f)(12)(i)(B) (Objective) ("Beginning in 2014, provide patients with the ability to view online, download, and transmit information about a hospital admission."); *id.* at (ii)(B) (Measure) (health care provider must attest that "more than 50 percent of all unique patients who are discharged from the inpatient or emergency department of an eligible hospital or CAH have their information available online within 36 hours after discharge").

27. As stated in one federal government publication, entitled *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (May 2013): "You will have better success meeting meaningful use requirements for stage 2 if you integrate a patient portal effectively into your practice operations." *Id.* at pg. 1, available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

28. This federal command came with consequence: if health systems did not meet the Meaningful Use requirements, including with respect to electronic health record access, they would not receive their full Medicare reimbursements. Under the Meaningful Use Program, this meant that they would be precluded from receiving incentive payments for meeting meaningful use. Under the Promoting Interoperability Program, providers are not entitled to receive the full amount of Medicare reimbursements if they do not meet the specific regulatory requirements.

Congress thus used the power of the purse to control health care providers like LCMC into making patient portals available online.

29.     As plaintiffs' petition shows, LCMC acted in response to this federal command, by being one of the entities that made a patient portal available online to its patients.

30.     Thus also, as two district courts have held, the federal officer removal statute's acting under requirement is met. *Doe, et al. v. UPMC*, 2020 WL 4381675, *7 (W. D. Pa. Jul.31, 2020), *interlocutory appeal denied*, 2020WL 5742685 (W.D. Pa. Sept. 25, 2020) ("UPMC has shown that by its participation in the Meaningful Use Program, it was 'acting under' DHHS when it engaged in the conduct at issue in the Complaint."); *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627, *3 (N.D. Ohio Oct. 30, 2020), *appeal denied*, 2020 WL 7705713 (N.D. Ohio Dec. 14, 2020) (same; "Because Defendant's participation assisted the federal government in achieving that goal, Defendant has satisfied the 'acting under' prong").

### E.     *LCMC Raises Colorable Federal Defenses to Plaintiff's Claims*

31.     The next requirement for federal officer removal is the establishment of a colorable federal defense. Here, LCMC has at least two colorable federal defenses to the claims at issue that satisfy this requirement.

32.     First, LCMC will argue that the First Amendment is a federal defense to the entirety of plaintiffs' petitions. As the Supreme Court has held: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017) (quoting *Reno v. Am. Civil Libs. Union*, 521 U.S. 844, 868 (1997)).

33. In *IMS Health Co. v. Sorrell*, 564 U.S. 552 (2011), the Court further made plain that the First Amendment protects both "the creation and dissemination of information," as they are both "speech within the meaning of the First Amendment." *Id.* at 570 (emphasis added).

34. Plaintiffs' amended petitions challenge how LCMC uses website analytics to enhance LCMC's ability to speak to the public, through the creation and dissemination of information. (Ex. A, Martin 2d Am. Pet. ¶¶ 61-63; Doe Am. Pet. ¶¶ 53-54.) Indeed, plaintiffs specifically allege that these analytical tools are "designed for interactive communication with potential customers and patients," including, *inter alia*, "scheduling appointments," "searching for physicians," "learning about medical issues [and] treatment options," and "joining support groups." (Ex. A, Martin 2d Am. Pet. ¶ 18; Doe Am. Pet. ¶ 17.)

35. Thus, LCMC has a First Amendment defense to plaintiffs' complaint. *Pacific Gas & Elec. Co. v. Pub. Util. Comm'n of Cal.*, 475 U.S. 1, 8 (1986) ("The constitutional guarantee of free speech serves significant societal interests apart from the speaker's interest in self-expression. By protecting those who wish to enter the marketplace of ideas from government attack, the First Amendment protects the public's interest in receiving information.").

36. Second, LCMC also has a preemption defense to plaintiffs' claims, at least to the extent that the claims relate to alleged unjust enrichment or illegal wiretapping for the patient portal lin. Federal law preempts state action "either by express provision, by implication, or by a conflict between federal and state law." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *see also Murphy v. Nat'l Coll. Ath. Ass'n*, 138 S. Ct. 1461, 1480 (2018) (discussing preemption doctrines).

37. Under this precedent, a defendant cannot be held liable under state law for doing precisely what the federal government wants them to do—as applied here, not only making a

patient portal available online to patients but also promoting the meaningful use of that portal. *See, e.g., Boggs v. Boggs*, 520 U.S. 833, 844 (1997) ("Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.").

### D.    *There is a causal nexus between LCMC's patient portal and plaintiffs' claims.*

38.    Finally, there is a causal nexus between LCMC's actions taken under color of federal law and plaintiffs' claims. Stated simply, plaintiffs' petition seeks to impose liability upon LCMC based on alleged disclosures made to Facebook in connection with a patient, potential patient, ward, guardian or any other third party clicking on the link to the patient portal on LCMC websites.

39.    Specifically, plaintiffs allege that "Facebook has designed the Meta Pixel such that Facebook receives information about patient activities on hospital websites as they occur in real time." (Ex. A, Martin 2d Am. Pet. ¶ 85; Doe Am. Pet. ¶ 75.)

40.    Thus also, "the moment that a patient takes any action on a webpage that includes the Meta Pixel—*such as clicking a button to register, login, or logout of a patient portal* or to create an appointment—Facebook code embedded on that page redirects the content of the patient's communications to Facebook while the exchange of information between the patient and hospital is still occurring." (Ex. A, Martin 2d Am. Pet. ¶ 85; Doe Am. Pet. ¶ 75.)

41.    Plaintiffs thus allege that it is a violation of Louisiana's Wiretap Act merely to have a link to the patient portal on the website, at least where any disclosure is made to any third party—which is the foundation upon which the Internet was built. *See, e.g., In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 501 (S.D.N.Y. 2001) ("The 'Internet' is a shorthand name for the vast collection of interconnected computer networks that evolved from the Advanced Research

Projects Agency Network ('ARPANet') developed by the United States Defense Department in the 1960's and 1970's. Today, the Internet spans the globe and connects hundreds of thousands of independent networks.").

42.     Moreover, plaintiffs specifically allege that their Wiretap Act claim is based on any potential interaction with LCMC's websites: "*All alleged communications between Plaintiffs or Class Members and Defendant qualify as wire communications under Louisiana law* because each communication is made using personal computing devices (*e.g.*, computers, smartphones, tablets) that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections." (Ex. A, Martin 2d Am. Pet. ¶ 188; Doe Am. Pet. ¶ 158 (emphasis added).)

43.     The heart of plaintiffs' petitions thus target LCMC's efforts to satisfy Meaningful Use Program criteria. For the Court to rule in plaintiff's favor, the Court would need to restrict the conduct that LCMC could undertake to meet those federal standards. Indeed, the federal government itself uses the Meta Pixel to promote its own Medicare patient portal on the Medicare government website, as depicted by the image below:



44.     This infringement on a federal prerogative is precisely the type of case that "relates to" or is "undertaken for" federal office, and that belongs in a federal court.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

45. LCMC satisfies all of the procedural requirements under 28 U.S.C. § 1446.

46. LCMC is filing this Notice of Removal within thirty (30) days of its receipt of any petition by service pursuant to 28 U.S.C. § 1446. *See also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999).

47. LCMC files this Notice of Removal in the United States District Court of the Eastern District of Louisiana, because the State court in which the action is pending, the Civil District Court for the Parish of Orleans, is within this federal judicial district. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

48. LCMC has attached a complete copy of the Verified Docket from the Civil District Court, including the petitions and amended petitions that were served upon LCMC prior to filing this Notice of Removal. Upon filing this Notice of Removal, LCMC will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the circuit Court for the Parish of Orleans.

## CONCLUSION

The federal "Mission" set forth in the National Coordinator's initial strategic plan was as follows: "To improve health and health care for all Americans through the use of information and technology." Office of the Nat'l Coordinator for Health Information Technology (ONC), *Federal Health Information Strategic Plan, 2011-2015*, at pg. 6.

Plaintiffs' petition directly challenge practices and procedures LCMC has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiffs' petitions are therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

Dated: February 1, 2023

                                          Respectfully submitted,

/s/ *Roland M. Vandenweghe*
E. Paige Sensenbrenner, T.A.
Roland M. Vandenweghe
ADAMS & REESE LLP
Hancock Whitney Center
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Email:  paige.sensenbrenner@arlaw.com
               roland.vandenweghe@arlaw.com

David A. Carney (*pro hac vice forthcoming*)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Email:  dcarney@bakerlaw.com

*Attorneys for Defendant LCMC Health Holdings, Inc. & Louisiana Children's Medical Center*

## CERTIFICATE OF SERVICE

I certify that on February 1, 2023, I filed the foregoing *Notice of Removal* with the Court's ECF system. A copy will be sent electronically to all counsel of record by operation of the ECF system. A copy will also be sent to counsel for plaintiffs by way of electronic mail.

                                          */s/ Roland M. Vandenweghe*
                                          *One of the attorneys for the*
                                          *LCMC Defendants*